IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2003 Session

## STATE OF TENNESSEE DEPT. OF CHILDREN'S SERVICES v. D.D.B. a/k/a D.B.M.

**Appeal from the Juvenile Court for Montgomery County**
**No. 50200054     John J. Hestle, Judge**

---

**No. M2002-00523-COA-R3-JV - Filed March 28, 2003**

---

This appeal arises from the termination of parental rights by the juvenile court.  We affirm the juvenile court.

**Tenn. R. App. P.3; Appeal as of Right, Judgment of the Juvenile Court**
**Affirmed and Remanded**

STELLA L. HARGROVE, Sp. J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J. M.S. and PATRICIA J. COTTRELL, J., joined.

Worth Lovett, Clarksville, Tennessee, for Appellant, D.D.B., a/k/a D.B.M.

Paul G. Summers, Attorney General & Reporter, Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for Appellee, State of Tennessee Dept. of Children's Services.

## OPINION

### I. FACTUAL BACKGROUND

In November of 1998, Appellant was arrested for parole violation and extradited to the State of Illinois.  She entrusted the care of her child, then almost two years of age, to an acquaintance.  Shortly thereafter, upon request of the acquaintance, the Department of Children's Services (DCS) intervened and acquired custody of the child.

In February of 1999, Appellant was released from prison, contacted DCS and set up visitation with the child.  She visited her three times in 1999 and five times in 2000, with the last visit being on October 29, 2000.

On June 22, 2001, DCS filed to terminate the parental rights of Appellant and others.   A hearing was held in juvenile court on December 6, 2001, and the order of termination was entered January 23, 2002.

## II.  GROUNDS ON APPEAL

### A.  GROUNDS FOR TERMINATION

Parents have a fundamental right to the case, custody and control of their children.  *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972).  However, these rights are not absolute, and the State may sever the relationship between parents and children if it can prove (1) an appropriate ground by clear and convincing evidence, and (2) that termination is in the best interest of the children.  *In re: Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1998); *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982).

Tenn. Code Ann.  § 36-1-113(g) sets out the possible grounds for termination of parental rights, including:

__ (1)  Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

__ (2)  There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

__ (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and;

(i)  The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

For purposes of termination proceedings, Tenn. Code Ann. § 36-1-102 (1)(A) defines "abandonment" as follows:

(1)     (A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i)      For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of

parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(E) defines "willfully failed to visit" as the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation. Subsection C defines "token visitation" as visitation, under the circumstances of the individual case, that constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child.

## B. WHETHER TERMINATION IS IN THE BEST INTEREST OF THE CHILD.

The juvenile court found by clear and convincing evidence that Appellant's parental rights should be terminated on the above grounds and found that termination of parental rights was in the best interest of the child. The court found that Appellant had failed to establish consistent visitation with her child, failed to rehabilitate herself and failed to establish a safe home for the child. The court also found that Appellant had only token visitation with the child and made no contributions toward her support since November 9, 1998, the date that the child was placed in state custody. Further, the court found that the conditions which led to the removal of the child, as well as other conditions that would cause the child further abuse or neglect, would probably not be remedied in the near future. The court also found that the child is of such an age that continuation of the legal parent and child relationship would greatly diminish the child's early integration into a stable and permanent home.

## EFFORTS DEMONSTRATED BY APPELLANT TO SEE THE CHILD:

Upon release from jail in February, 1999, Appellant did not visit with her child until May, 1999. She testified that living with a husband who was a trucker hindered her from seeing her child. However, the evidence showed that she did not live with her husband after her release from jail. She testified as follows:

Q. Until now you haven't visited with your child very much. Can you tell the court why that is so?
A. Because my husband was a truck driver and we were traveling too because he had different places that he had to go; and they would change his company over different places; and that's why did not - have a stable home; but my daughter was very well taken care of.
------------
Q. And you got out in February of '99?
A. Yes, sir.
Q. And when did you come down here to see about your daughter?
A. I don't remember.
Q. Well, was it in February of '99?
A. It was some where in '99, yes.

Q. Did you not testify that the reasons that you did, was because your husband was a trucker?
A. Yes, sir.
Q. And you were on the road with him?
A. I was on the road in November with him and we were stuck in (indiscernible) Motel – after that I don't know.
Q. That was in '99?
A. Yeah, when I got – we were here in '99.
Q. After you got out of prison, were you in jail or prison?
A. I was in jail.
Q. After you got out of jail?
A. I wasn't with him.

----------

Q. Yet you say you were concerned about your child?
A. I was concerned about my child, but like I told DCS, I was also confused, didn't know what I was doing, I was moving from here, to there, I was trying to do my best, I went back to my dad's house to stay there. I went to my parenting classes. I did everything there. My dad tried to call and talk to my case worker. They say my daughter went into DCS custody, my father called down here to come and get her; and they told him that he has no rights to come down here and get her. That's her grandpa.

----------

On cross-examination, Appellant testified:

Q. Did you and Mr. Mallory separate?
A. Uh huh (meaning yes by sound).
Q. When?
A. Well, the last time I seen him was November 3rd, before I left.
Q. November 3rd, 1998?
A. No. When my daughter went into DCS custody, is that when she went in there, '98?
Q. Yes. So the last time you saw Mr. Mallory was in 1998?
A. Yes, ma'am.
Q. And Mr. Mallory is a trucker, right?
A. Yes, ma'am.
Q. So you say that you couldn't see your daughter because you're on the road all the time (indiscernible) ?
A. Well, that  --  yeah, you're right.

Appellant also had difficulty remembering when she last saw her daughter.

Upon cross-examination, she testified:

Q. The last time you visited your daughter, wasn't that October of 2000?
A. I don't know. I think I visited –

Q. You don't remember the last time you visited your daughter?
A. I know it was September.
Q. September of 2000.
A. No, '99 because I asked to see her in October when I came down here for court.
Q. When was the last time you actually saw your daughter?
A. September last year on her birthday.
Q. September of 2000; and that you moved to Las Vegas?
A. Uh huh (meaning yes by sound).

Appellant testified that upon release from jail she lived in Missouri with a female friend and then with a male friend. She then moved into her parent's home in North Carolina, and stayed there for less than a month. Appellant next moved back to Missouri, met a man and moved with him to Las Vegas in November of 2000. The record reflects that her first job upon release from jail was at a McDonalds in Las Vegas.

Appellant testified that she had a tenth grade education and that she was in special education while she was in school. She stated that she now has a home and a job and that she intends to stay in Clarksville. She testified that she is ready, willing and able to care for her child.

There is testimony in the record about a Plan of Care entered into between Appellant and DCS. However, it appears that no plan was ever made a part of the record. The evidence shows that on her second visit with the child, on August 2, 1999, she read and signed a permanency plan for DCS. The Confidential Report of the guardian ad litem refers to a plan, and the juvenile judge refers to a current permanency plan.

We find that Appellant abandoned her child within the meaning of Tenn. Code Ann. § 36-1-113(g)(1) and (g)(3)(A). Her eight visits over a period of some two years and four months (February 1999, upon release from jail, to June 2001, when the termination petition was filed by DCS), constitute token visitation as defined by § 36-1-102(1)(C) and are nothing more than perfunctory visitation of such an infrequent nature as to merely establish minimal or insubstantial contact with the child. We note that on the next to the last visit scheduled by her, on August 10, 2000, Appellant failed to even show up.

Appellant failed to visit the child at all for a period of eight consecutive months (October 2000 to June 2001), prior to DCS filing its petition. She made no attempts to return to Tennessee until after the termination petition was filed.

The record reflects that since DCS assumed custody of the child in November of 1998, she has been in approximately five different foster care families. The child turned age six in September of 2002. We agree with the juvenile judge that the three provisions of Tenn. Code Ann. § 36-1-113(g)(3)(A) I, ii, and iii apply in this case. We also find that the ruling of the juvenile court is in accordance with the provisions of Tenn. Code Ann. § 36-1-113(c)(I)(1)(2)(3) and (4).

We therefore find that the record contains clear and convincing evidence of abandonment pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and 36-1-113(g)(3)(A), and that it is in the best interest of the child that Appellant's parental rights be terminated.

### III.  CONSTITUTIONAL ARGUMENT UNDER *SWANSON*, 2 S.W.3d 180 (Tenn. 1999)

We find no merit to the Appellant's argument under *In re:  Brittany Swanson*, 2 S.W.3d 180, (Tenn. 1999), that the willful failure to visit standard within the meaning of Tenn. Code Ann. § 36-1-102(1)(D) creates an irrebuttable presumption which operates to unconstitutionally deprive the mother of her right to the care and custody of her daughter where such alleged abandonment was not intentional.

### IV.  CONCLUSION

The judgment of the juvenile court is affirmed, and the case is remanded to juvenile court. Costs are assessed against Appellant.

_____
STELLA L. HARGROVE, JUDGE